# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 4, 2003 Session

## OTIS LAWRENCE STITT, III v. TOI LATISE STITT

**Appeal from the Circuit Court for Davidson County**
**No. 00D-1742     Muriel Robinson, Judge**

**No. M2002-02649-COA-R3-CV - February 11, 2005**

This appeal involves a dispute over a periodic long-term spousal support award. Following a twelve-year marriage, both parties requested a divorce from the Circuit Court for Davidson County. The trial court conducted a bench trial and declared the parties divorced. The court also ordered the husband to pay the wife $350 per month in spousal support until her death or remarriage. The husband takes issue on this appeal with the spousal support award. We have determined that the wife is not entitled to long-term spousal support but is entitled to $350 per month in transitional support for three years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified and Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and ALAN E. GLENN, SP. J., joined.

R. Price Nimmo, Nashville, Tennessee, for the appellant, Otis Lawrence Stitt, III.

Yvette Y. Cain, Nashville, Tennessee, for the appellee, Toi Latise Stitt.

### OPINION

### I.

Toi Latise Stitt and Otis Lawrence Stitt, III were married on June 23, 1990, in San Diego, California. They were undergraduates at the time and supported themselves primarily with financial aid and loans, as well as gifts from Mr. Stitt's family. Ms. Stitt also worked part-time. When Mr. Stitt was accepted at Meharry Medical College, he asked Ms. Stitt to accompany him to Nashville. Even though Ms. Stitt was one year away from earning her degree from San Diego State University, she agreed to join her husband in Nashville and to complete her undergraduate studies at Tennessee State University.

When they arrived in Nashville in June 1999, the Stitts moved into a house purchased by Mr. Stitt's father. Mr. Stitt paid the mortgage note and most of the other bills with his student loans. Ms.

Stitt also obtained student loans to complete her undergraduate education. Neither party was employed during this period. The move to Nashville and the change in Mr. Stitt's daily routine exacerbated tensions between the Stitts that had been present for several years. Further, Mr. Stitt's studies and hospital work required him to be absent from home quite often, and Ms. Stitt became suspicious and troubled about Mr. Stitt's study sessions with female classmates. During this period, the Stitts began to have violent domestic confrontations that increased in frequency.

In June 2000, the Stitts separated, and Mr. Stitt filed a complaint for divorce in the Circuit Court for Davidson County. Ms. Stitt counterclaimed for divorce and sought both temporary and permanent spousal support. The trial court initially ordered Mr. Stitt to pay Ms. Stitt $250 per month in temporary support but later increased the amount to $500 after Ms. Stitt was forced to move out of the house owned by Mr. Stitt's father.[1] Following a bench trial, the trial court entered a final decree on October 7, 2002, declaring the Stitts divorced in accordance with Tenn. Code Ann. § 36-4-129(b) (2001). The trial court also allocated the responsibility for paying the sizeable marital debt and ordered Mr. Stitt to pay Ms. Stitt $350 per month until her death or remarriage. Mr. Stitt has appealed.

## II.

Mr. Stitt's sole issue on appeal relates to the portion of the judgment requiring him to pay Ms. Stitt $350 per month in permanent spousal support. He insists that he should not be required to pay permanent spousal support because (1) Ms. Stitt does not need it, (2) he cannot afford to pay it, and (3) Ms. Stitt contributed little to the marriage. Ms. Stitt insists that she is entitled to permanent alimony because of (1) her contributions to the marriage, including her agreement to move to Nashville from San Diego, (2) Mr. Stitt's greater earning capacity, and (3) Mr. Stitt's fault. We have determined that Ms. Stitt has not demonstrated that she is entitled to anything more than transitional support.

### A.

There are no hard and fast rules for spousal support decisions. *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001); *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999). Accordingly, appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Nelson v. Nelson*, 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002); *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). Our role is not to fine-tune a trial court's spousal support award, *Davidson v. Davidson*, No. M2001-01830-COA-R3-CV, 2002 WL 31769205, at *3 (Tenn. Ct. App. Dec. 11,

[1]Following the parties' separation, Mr. Stitt's father sold the house in which they had been living. Mr. Stitt fell behind on his temporary support payments, and on July 16, 2001, the trial court held him in contempt and entered a $2,990.48 judgment for Ms. Stitt.

2002) (No Tenn. R. App. P. 11 application filed), but rather to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001).

Tennessee law recognizes several separate classes of spousal support, including long-term periodic spousal support (alimony in futuro),[2] alimony in solido,[3] rehabilitative spousal support,[4] and transitional spousal support.[5] Tenn. Code Ann. § 36-5-101(d)(1) reflects a statutory preference favoring rehabilitative spousal support and transitional spousal support over long-term periodic spousal support. *Bratton v. Bratton*, 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). However, this statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn.1991).

Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique facts of each case and require a careful balancing of all relevant factors, including those identified in Tenn. Code Ann. § 36-5-101(d)(1)(E). *Robertson v. Robertson*, 76 S.W.3d at 338; *Dube v. Dube*, 104 S.W.3d 863, 868 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). Among these factors, the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d at 342; *Bogan v. Bogan*, 60 S.W.3d at 730; *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). Of these two factors, the disadvantaged spouse's need is the threshold consideration. *Aaron v. Aaron*, 909 S.W.2d at 410; *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999).

---

[2]Long-term periodic spousal support is intended to provide long-term support to an economically disadvantaged spouse who is unable to be rehabilitated. *Burlew v. Burlew*, 40 S.W.3d at 471; *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). It is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse. *Wright v. Quillen*, 83 S.W.3d 768, 773 (Tenn. Ct. App. 2002).

[3]Alimony in solido promotes the twin goals of certainty and finality by awarding a fixed amount of support without conditions. *Bryan v. Leach*, 85 S.W.3d 136, 145 (Tenn. Ct. App. 2001). It is an award of support for a definite sum of money to be paid at once or in ascertainable installments over a definite period of time. *Burlew v. Burlew*, 40 S.W.3d at 472; *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999).

[4]Rehabilitative spousal support is currently defined as support that is intended to enable an economically disadvantaged spouse to acquire additional education and training that will enable the spouse to achieve and maintain a standard of living comparable to the standard of living that existed during the marriage or to the post-divorce standard of living expected to be available to the other spouse. Tenn. Code Ann. § 36-5-101(d)(1)(C) (Supp. 2004). Prior to the effective date of this revised definition in August 2003, the Tennessee Supreme Court had identified the marital standard of living as one of many factors to consider in making a spousal support award. *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002).

[5]Transitional spousal support is paid for a definite duration when a court finds that rehabilitation is not necessary but that the economically disadvantaged spouse needs assistance adjusting to the economic consequences of divorce. Tenn. Code Ann. § 36-5-101(d)(1)(D). Prior to August 2003, transitional spousal support was considered to be rehabilitative spousal support. *Robertson v. Robertson*, 76 S.W.3d at 340-41 (holding that rehabilitative alimony may also provide temporary income to support a disadvantaged spouse during the post-divorce economic adjustment).

**B.**

The parties' standard of living in this case was due, in no small measure, to the gifts they had received from Mr. Stitt's parents along with the parties' educational grants and loans. Neither Mr. Stitt nor Ms. Stitt had been employed during their marriage because they had been pursuing their education, although Ms. Stitt worked part-time on occasion. The funds they had been receiving from Mr. Stitt's parents should play no role in determining whether or to what extent Mr. Stitt should pay Ms. Stitt spousal support. *Goodman v. Goodman*, 8 S.W.3d at 294-95.

Mr. Stitt's income will be modest while he is completing his medical studies and any subsequent residencies and fellowships. During this time, he will earn between $28,000 and $34,000 per year depending on the field of study he pursues. There is no indication in the record as to the duration of these residencies or as to what specialty Mr. Stitt intends to pursue. Accordingly, while it is reasonable to assume that his income will increase once he establishes his medical practice, it would be difficult to ascertain when the increase in income would occur and in what amount.

During her marriage to Mr. Stitt, Ms. Stitt obtained a B.S. in psychology. Currently, she is working to complete her Master's degree. There is no evidence in this record that she put her professional career on hold in order to go to work to help her husband obtain his medical degree, as there was in *Justice v. Justice*, No. M1998-00916-COA-R3-CV, 2001 WL 177060, at *4 (Tenn. Ct. App. Feb. 23, 2001) (No Tenn. R. App. P. 11 application filed). Ms. Stitt was pursuing her own education during the marriage, and her financial and other contributions to the marriage were minimal. As far as this record shows, the only sacrifice Ms. Stitt made was agreeing to move with Mr. Stitt to Nashville when he enrolled at Meharry Medical College.

Based on our de novo review of the record in light of the factors in Tenn. Code Ann. § 36-5-101(d)(1)(E), we have determined that the evidence does not support the trial court's decision to award Ms. Stitt periodic long-term support. However, in light of the duration of the marriage, the likely future discrepancies between the parties' income, and the fact that Ms. Stitt is still completing her education, we have determined that she is entitled to $350 per month in transitional support[6] for three years following the entry of the October 7, 2002 divorce decree. Ms. Stitt will require no further rehabilitation following the completion of her studies, and this award will enable her to complete her adjustments following the divorce.

**III.**

We affirm the October 7, 2002 final divorce decree as modified by this opinion and remand the case to the trial court with directions to enter an order awarding Ms. Stitt three years of

---

[6]As we have already noted, the type of support now referred to as transitional support was referred to as rehabilitative support at the time of the hearing in this case. Consistent with the existing statutory nomenclature, we refer to this support as transitional support.

-4-

transitional alimony in the amount of $350 per month[7] commencing on October 7, 2002, and for any further proceedings consistent with this opinion that may be required. The costs of this appeal are taxed in equal proportions to Otis Lawrence Stitt, III and his surety and to Toi Latise Stitt for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

_____

[7]The October 7, 2002 order required Mr. Stitt to pay his support through the Clerk of the Circuit Court for Davidson County and required him to pay a fee to the clerk's office for this service. The trial court may, in its discretion, make the same arrangements for the payment of transitional support to Ms. Stitt.