IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 1, 2002 Session

## CARRIE MILDRED MAYER DUBE v. MICHAEL NORMAN DUBE

**Appeal from the Chancery Court for Washington County**
**No. 33043      Thomas J. Seeley, Jr., Judge, by Interchange**

### FILED DECEMBER 9, 2002

### No. E2002-00413-COA-R3-CV

Carrie Mildred Mayer Dube ("Wife") sued Michael Norman Dube ("Husband") for a divorce. Wife is primarily a stay-at-home mother and Husband is an emergency room physician. The Trial Court divided the marital property with 65% of the property going to Wife. The Trial Court awarded Wife permanent alimony of $3,200 per month after finding Wife could not be sufficiently rehabilitated. Child support was set based on Husband's income for 2000, during which time he claims to have worked approximately 90 hours per week. Husband appeals the division of marital property, award of permanent alimony, and amount of child support which was based on his 90 hour work week. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Thomas C. Jessee, Johnson City, Tennessee, for the Appellant Michael Norman Dube.

Olen G. Haynes, Jr., and Robert D. Arnold, Johnson City, Tennessee, for the Appellee Carrie Mildred Mayer Dube.

# OPINION

## Background

This is a divorce case wherein Wife was granted a divorce based on Husband's admitted adultery. The parties had four children, three of whom were minors (ages 13, 7 and 4) when the complaint for divorce was filed. The issues on appeal concern the Trial Court's division of the marital assets, award of alimony, and child support.

Wife testified at length relevant to the issues on appeal.[1] She and Husband were married in 1984. At the time of trial, Wife was 45 years old. She quit high school in either ninth or tenth grade and later obtained a GED. The only education Wife had since then was a unit secretary course she took when her first child was young. She was working as a unit secretary at a hospital when the parties were married. Early in the marriage and while living in Florida, Husband had a drug problem and eventually began selling drugs. When some of Husband's friends started getting arrested, they decided to move to a different part of Florida. After this move, Husband began growing and selling marijuana. Husband eventually was arrested and received probation. The parties moved to East Tennessee in 1988. Wife worked at U.T. Hospital and Husband took classes at the University of Tennessee. After completing his studies at U.T., Husband applied for and was accepted to medical school at East Tennessee State University. Husband and Wife then moved to Johnson City and Wife became employed at North Side Hospital and continued to work until she developed complications with the pregnancy of the parties' second son.[2] Wife quit work at that time and never returned to work outside of the home. Wife's work experience has been limited. In addition to working at hospitals, she also performed some work in retail as a cash register operator. Wife testified Husband wanted her to stay home with the children when she ceased working, and they never talked about Wife again getting a job outside of the home.

In early 1999, Husband called Wife after a three day trip to Hilton Head and told her he never would be coming home. Wife eventually learned Husband was seeing another woman. Wife claims Husband threatened to move to the Cayman Islands where, he claims, there is no extradition law and to return when the youngest child is 18 years of age. Wife filed a statement of income and expenses with the Trial Court showing total monthly expenses of $8,473 and net income of $0.00.

Husband testified he earned $253,062 in 1997, $312,949 in 1998, and $350,000 in 1999. His gross income for 2000 was $370,000. At the time of trial, Husband was 40 years old. He works as an emergency room physician. He presently works three 24 hour shifts per week. He may work longer than 24 hours on a shift if there is a heavy patient load. According to Husband,

---

[1] There was substantial testimony at trial concerning various matters not raised on appeal.

[2] Wife already had one child, a daughter, when the parties were married. This child was adopted by Husband and was over the age of eighteen at the time of trial.

there is approximately $14,000 in credit card debt that was incurred during the marriage. He also owes approximately $130,000 in student loans.

Husband testified the marriage was shaky from the beginning. Wife would be angry and hateful unless she wanted something. When he would buy her what she wanted, she would act fine for a couple of days and then the cycle would start over again. He testified to constant money problems and stated Wife would hide money from him. Husband denied ever selling drugs. Husband admitted he began a sexual relationship with a co-worker after he and Wife separated. He intends on maintaining this relationship.

The Trial Court granted a divorce to Wife based on Husband's admitted adultery. The Trial Court ordered Husband to pay child support in the amount of $4,148.00 per month plus an additional $1,200 per month in trust for the children's college education. The Trial Court noted the total amount of child support was approximately "$1,200 a month less than the full guideline amount …." With regard to division of marital property, the Trial Court stated:

> [T]he factors the Court is to consider are reflected in 36-4-121…. The duration of the marriage is indicated, seventeen years. The age, physical and mental health, skills, employability, earning capacity. With respect to those things Ms. Dube's forty-five, Dr. Dube's a little bit younger, he's forty. Apparently both have some, as I understand it, relatively minor physical problems.
>
> Certainly as far as employability and earning capacity, that greatly favors Dr. Dube. The tangible or intangible contributions of one party to the education and training or increased earning power, it is my understanding from testimony that Ms. Dube did work some while Dr. Dube was attending the University of Tennessee and for a brief period of time when he started medical school up here.…
>
> The ability of each party to acquire future acquisitions of capital assets and income. Of course, that greatly favors Dr. Dube.
>
> With respect to the contribution of each party to the acquisition and preservation, appreciation of marital assets. Again, Dr. Dube as far as who made the actual financial resources available for acquisition and appreciation of property, that was what he did and not what Ms. Dube did. She did contribute to the marriage as a homemaker and parent and mother of these children.…

After considering the above factors, the Trial Court ordered the marital property split 65% to Wife and 35% to Husband after giving Husband credit for any capital gain taxes realized in the sale of real property. The marital debt and any losses from the sale of real estate was divided

with Husband being responsible for 65% of the debt and Wife 35%. Each party was awarded the household furnishings in their respective homes.

With regard to alimony, the Trial Court noted the statutory preference for rehabilitative alimony over permanent alimony. The Trial Court discussed the factors to be considered when awarding alimony, many of which were the same factors discussed above when it considered the division of marital property. The Trial Court observed many of the factors, such as "earning capacity, obligation needs, and the financial resources of the parties, the relative education and training of the parties" substantially favored Husband. Another factor was the desirability for one party to stay at home to care for the young children. The Trial Court observed Wife was 45 years old and had a GED. Nevertheless, the Trial Court concluded Wife could be rehabilitated and attend college to obtain a degree. As such, the Trial Court ordered rehabilitative alimony in the amount of $5,000 per month for six years.

After rendering the above opinion, the Trial Court apparently rethought its decision and amended its opinion. In so doing, the Trial Court stated it did not believe Wife could rehabilitate herself to a standard of living even approaching what she enjoyed for the past few years and "one which [Husband], a medical doctor with a present monthly income of approximately $30,000, will continue to enjoy after this divorce." After pointing out alimony payments would be tax deductible, the Trial Court ordered permanent alimony in the amount of $5,000 per month for five years, then $2,500 per month thereafter, noting the larger sum for the five year period was to provide Wife the opportunity to further her education or otherwise train herself for the labor market.

Husband filed various motions and further arguments were undertaken concerning the award of alimony and other matters. After further hearings, the Trial Court issued yet another Order, this time concluding Wife was entitled to permanent alimony in the amount of $3,200 per month until death or remarriage. In so doing, the Court stated:

> I'm going to award permanent alimony …. There is no way this lady can be rehabilitated. Rehabilitated to what? … A unit secretary? She has absolutely no skills other than some limited secretarial skills.… She is going to have to retrain herself hopefully, or get educated. And that's the reason I order the five thousand ($5,000.00) dollars for five years… to provide her some kind of extra alimony so that she could try to do that. But the practical matter, there is no rehabilitation or restoration of skills for Ms. Dube. She never had any. It's as simple as that.

The Trial Court again discussed the various factors to consider when awarding alimony, noting, *inter alia*, Husband's greater earning capacity, younger age, Wife's limited earning potential and education. The Trial Court reviewed other factors and also noted Husband simply found himself another "romantic interest" and in so doing, "he's pretty much changed what would be [Wife's] and the children's standard of living that they would have enjoyed had [Husband] stayed

-4-

in this marriage relationship." After discussing the relevant factors, the Trial Court concluded they weighed heavily in favor of Wife, and even if Wife obtained additional training or education, she would "never approach the income level" that Husband enjoys.

After the Trial Court made the above ruling, Husband filed a motion to alter or amend the judgment. In this motion, Husband sought, among other things, clarification of the number of hours he was required to work per week in order to compute child support payments. The reason for this was a potential decrease in the number of hours Husband would be working due to several different factors, some of which were outside his control. The Trial Court refused this request.

Husband raises three issues on appeal, which we quote as follows:

1.      Did the trial court err as a matter of law by concurrently awarding rehabilitative alimony and alimony in futuro?

2.      Did the trial court err as a matter of law in awarding the wife a disproportionate distribution of the marital property based solely on the appellant husband's past income when the income is based on a 90 hour work week?

3.      Does the amount of child support awarded constitute an abuse of discretion by the trial court when the trial court refused to make specific findings of fact concerning the required number of hours the appellant husband must work in relation to the 90 hours per week he was working at the time of the divorce?

**Discussion**

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

With regard to the Trial Court's division of the marital assets, the many factors to be considered by a trial court in making an equitable distribution of property are set forth in Tenn. Code Ann. § 36-4-121(c), and include age, physical and mental health, employability, the contribution of a party to the marriage as homemaker, tax consequences, etc. A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), when dividing marital property:

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

The Trial Court carefully considered the relevant factors when determining how to divide the marital assets and debt. Most, if not all, of the factors weigh in favor or Wife. For example, Husband's greater earning potential is apparent, as is his greater ability to acquire assets in the future. Husband is approximately five years younger than Wife and he has a significant educational background, obtained during the marriage, which Wife is lacking. While the division of the assets certainly was not equal, this does not mean it is inequitable. From the record before us, we cannot conclude the Trial Court abused its discretion when it divided the marital property or that this division was not just and equitable. Therefore, we affirm the Trial Court on this issue.

Next, we consider Husband's challenge to the alimony award. Determinations concerning the amount and duration of alimony are factually driven and require a balancing of the various factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Herrera v. Herrera*, 944 S.W.2d 379, 387-88 (Tenn. Ct. App. 1996). These factors include:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F)  The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G)  The separate assets of each party, both real and personal, tangible and intangible;

(H)  The provisions made with regard to the marital property as defined in § 36-4-121;

(I)  The standard of living of the parties established during the marriage;

(J)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K)  The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Husband is correct in his assertion that under Tennessee law, it is inconsistent to award both rehabilitative alimony and permanent alimony. *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).  In the present case, the Trial Court apparently struggled with both the type and amount of alimony to award to Wife, as shown by the fact that the initial award was changed several times.  In the end, however, the Trial Court awarded only permanent alimony after it determined Wife could not be rehabilitated sufficiently.  We disagree with Husband's characterization of the final award of alimony as both rehabilitative and permanent.

Husband also argues Wife should not have received permanent alimony.  This Court observed in *Anderton v. Anderton*, 988 S.W.2d 675 (Tenn. Ct. App. 1998):

Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.

*Id.* at 682 (citations omitted). A trial court's determination regarding spousal support generally will not be altered by this Court unless the trial court abused its discretion. *See Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). It is the roll of this Court to correct errors below and not to fine tune a trial court's decision.

While all relevant factors must be considered when setting the amount of an alimony award, need and the ability to pay are the critical factors. *Robertson*, 76 S.W.3d at 342. Discussing the intent behind alimony, our Supreme Court has held: "the purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce." *Burlew v.* Burlew, 40 S.W.3d 465, 470-71 (Tenn. 2001) (quoting *Anderton*, 988 S.W.2d at 682).

Although "the legislature has demonstrated a preference for an award of rehabilitative alimony[,]" *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000), the relevant alimony statute, Tenn. Code Ann. § 36-5-101(d)(1), does contemplate, under the appropriate circumstances, a long-term award of alimony, or alimony *in futuro*, providing: "[w]here there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, . . . then the court may grant an order for payment of support and maintenance on a long-term basis . . . ." Tenn. Code Ann. § 36-5-101(d)(1). "[T]he purpose of [alimony *in futuro*] is to provide financial support to a spouse who cannot be rehabilitated." *Burlew*, 40 S.W.3d at 471.

While the legislature has expressed a preference for rehabilitative alimony in Tenn. Code Ann. § 36-5-101(d)(1), the record on appeal shows, as found by the Trial Court, that Wife's possibilities to rehabilitate herself are extremely limited. *See* Tenn. Code Ann. § 36-5-101(d)(1). The evidence contained in the record does not preponderate against this finding by the Trial Court or against the Trial Court's specific finding that "[t]here is no way this lady can be rehabilitated." Accordingly, after applying all relevant statutory factors to the facts and circumstances shown by the record, we hold the Trial Court's award of permanent alimony, as opposed to rehabilitative alimony, was not an abuse of discretion, and we affirm on this issue.

Husband's final issue on appeal concerns the Trial Court's award of child support and its refusal to "make specific findings of fact concerning the required number of hours the appellant husband must work in relation to the 90 hours per week he was working at the time of the divorce." Husband apparently anticipates having to work a reduced number of hours in the future (i.e. less than the 90 hours per week he claims to be working presently).

The child support guidelines ("Guidelines") provide for a fixed percentage of the obligor's net income to be paid based on the number of children for whom support is owed, in this case 41% for three children. The Guidelines define what is to be included in gross income and then what is to be subtracted to arrive at the obligor's net income, upon which the percentage of child support is based. Specifically, the Guidelines defines gross income to include, with certain exceptions not relevant here, "all income from any source … whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime

payments," etc. Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a). The Trial Court set the child support payments based on Husband's income for 2000. If that income level changes in the future, then the child support payments can be increased or decreased as appropriate. *See* Tenn. Code Ann. 36-5-101(a)(1). It would not be appropriate for the Trial Court, or this Court, to set future support payments based on a potentially reduced work schedule for Husband when that reduced schedule may never happen or may not occur for several years. Accordingly, we affirm the Trial Court's determination with regard to child support payments as well as its refusal to make some holding concerning the number of hours Husband must work. This issue can be addressed in the future if circumstances, including Husband's income, warrant a change under the Guidelines.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Michael Norman Dube, and his surety.

_____
D. MICHAEL SWINEY, JUDGE