# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 11, 2004 Session

## CHARLES FREDRICK GLANZMAN v. JOYCE BRYANT GLANZMAN

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004908-02      George H. Brown, Judge**

---

**No. W2003-03067-COA-R3-CV - Filed December 2, 2004**

---

This is a divorce case. The husband appeals from the trial court's divorce decree distributing the marital and separate property and awarding the wife alimony *in futuro*. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Charles Fredrick Glanzman, *Pro se*.

J. Richard Rossie and David A. Billions, Memphis, Tennessee, for the appellee, Joyce Bryant Glanzman.

## MEMORANDUM OPINION[1]

### Facts and Procedural Background

Plaintiff/Appellant Charles Fredrick Glanzman ("Husband") and Defendant/Appellee Joyce Bryant Glanzman ("Wife") were married on December 27, 1980. At the time they were married, Husband was thirty-three (33) years old while Wife was fifty (50) years old. No children were born of the marriage. During the marriage, Husband was employed as an engineer for Prime Development Group, Inc. and also worked as a consulting engineer. Early in the marriage, Wife

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

operated a private learning clinic, but she worked primarily as a part-time school teacher during the latter stages of the marriage. At the time of the divorce, Wife was seventy-three (73) years old and Husband was fifty-six (56) years old.

On November 17, 2003, the trial court entered a Final Decree of Divorce, awarding a divorce to Wife on the ground of inappropriate marital conduct. In the divorce decree, the trial court ordered, in pertinent part, as follows:

> 1. That [Wife] . . . is hereby awarded an absolute divorce from [Husband] upon the ground of inappropriate marital conduct . . . .;
>
> . . . .
>
> 3. That [Wife] shall retain as her sole property the [marital residence] and/or the proceeds from the sale of the home . . . . That [Wife] shall be responsible for the [first and second] mortgage payments . . . . ;
>
> . . . .
>
> 5. That [Husband] shall pay [Wife] permanent alimony *in futuro* in the amount of $1,500.00 per month . . . . ;
>
> 6. That [Wife] shall be awarded as her sole property all personal property and other items identified in Trial Exhibit 6, . . . and that [Husband] shall be awarded all other personalty or items of the marriage which are not identified in said Exhibit . . . . ;
>
> . . . .
>
> 8. That [Husband] shall retain as his sole and separate property his IRA, 401k and other retirement[] accounts[.]

Husband filed an appeal to this Court presenting, as we perceive them, the following issues for our review:

(1)     Whether the trial court erred in its distribution of the marital and separate property, and

(2)     Whether the trial court erred in awarding alimony *in futuro* to Wife.

## Standard of Review

In matters heard by a trial judge sitting without a jury, our review of the trial court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness. Tenn. R. App. P. 13(d) (2004). We will not reverse the trial court's factual findings unless the evidence in the record preponderates against those findings. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). A trial court's conclusions on questions of law are reviewed *de novo*, but without any presumption of correctness. *Id*. (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

## Property Division

Under section 36-4-121 of the Tennessee Code, the court may, upon request of either party in a divorce action, equitably divide or distribute the marital property. Tenn. Code Ann. § 36-4-121(a)(1) (2004). In making an equitable division, the trial court shall consider all relevant factors, including any of those listed in section 36-4-121(c). *Flannary v. Flannary*, 121 S.W.3d 647, 650–51 (Tenn. 2003). Section 36-4-121(c) sets forth the following factors:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2004). "A division is not rendered inequitable simply because it is not precisely equal, or because each party did not receive a share of every piece of marital property." *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998)). Trial courts are granted broad discretion when dividing

the marital estate, and such decisions are "entitled to great weight on appeal." *Watters v. Watters*, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997) (citing *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn Ct. App. 1988)). Appellate courts will generally defer to a trial court's division of property unless it is inconsistent with the factors enumerated in section 36-4-121(c) or is against the weight of the evidence. *Id*.

In the case at bar, the parties stipulated prior to the divorce hearing that Wife would be awarded the net proceeds from the sale of the marital residence as her sole separate property. The order awarding Wife the marital residence also provided that the court shall consider Husband's relinquished interest in those proceeds when deciding the remaining disputed issues, including property division and alimony. In the divorce decree, Wife received the marital home, but she also assumed both mortgages. The record reflects that, depending on the amount for which the martial home sold, Wife would receive between $166,000 and $240,000 in sale proceeds.

With regard to the personal property, the parties were unable to agree to a division of the personal property. The trial court awarded Wife items of personal property listed in Trial Exhibit 6.[2] Although Husband presented evidence, through cross-examination of Wife, of the value of three separate rings and a fur coat, there is no evidence in the record as to the value of the other items listed in Trial Exhibit 6. Husband received all other items of personal property not listed in Trial Exhibit 6, as well as all funds held in his IRA, 401k and other retirement accounts.

In *Dube v. Dube*, 104 S.W.3d 863 (Tenn. Ct. App. 2002), this Court affirmed a trial court's division of marital property that resulted in one spouse receiving a significantly greater proportion of the marital assets. *Id.* at 868. In *Dube*, the husband had greater earning potential than the wife; greater ability to acquire assets; significant educational background; and was significantly younger than the wife. *Id*. The *Dube* court reasoned that, while the division of assets was certainly not equal, the division was equitable in light of the factors enumerated in section 36-4-121(c). *Id*.

Here, Wife was seventy-three years old at the time of the divorce. The record shows that, during the marriage, she contributed significantly as a wage earner, while working full-time. However, due to poor physical health, she had been unemployed since at least the year 2000. She did not own any investments or retirement accounts. She received approximately $600 per month in social security. Husband, however, was fifty-six years old at the time of trial, in relatively good health, and maintained full-time employment as an engineer, earning income from Prime Development Group, Inc. in the amount of $73,150.50 as reflected by his 2002 W-2. In addition, Husband owned retirement accounts worth approximately $40,000.

Although Wife received the marital residence and many items of personal property, we cannot conclude that the trial court's division of property was inequitable without evidence of the value of the personal property. Therefore, after reviewing the record and in light of the factors

---

[2]Prior to the trial, each party prepared a proposed list of assets, dividing the personal property. During the course of the trial, Wife introduced her proposed list as Trial Exhibit 6.

enumerated in Section 36-4-121(c), we conclude that the evidence does not preponderate against the trial court's division of property.

### *Alimony*

The trial court awarded Wife $1,500 per month in alimony *in futuro*. Husband asserts that the alimony payment is beyond his ability to pay. Husband further contends that, because Wife received such a large share of the property division, she does not require spousal support.

Similar to the division of marital property, the trial court's determination of whether to award alimony is guided by statutory factors found in section 36-5-101(E) of the Tennessee Code. Tenn. Code Ann. § 36-5-101(E) (2004). Section 36-5-101(E) provides that, in determining the nature, amount, length of term, and manner of alimony payment, the trial court shall consider all relevant factors, including:

> (I) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (iii) The duration of the marriage;
> (iv) The age and mental condition of each party;
> (v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be the custodian of a minor child of the marriage;
> (vii) The separate assets of each party, both real and personal, tangible and intangible;
> (viii) The provisions made with regard to the marital property as defined in § 36-4-121;
> (ix) The standard of living of the parties established during the marriage;
> (x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(E)(i)–(xii) (2004). While the statute sets forth many factors, the two most important factors are (1) the need of the recipient spouse and (2) the obligor spouse's ability to pay, with the single most important factor being the recipient spouse's need for support. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Scarbrough v. Scarbrough*, No. W2000–01807-COA-R3-CV, 2001 WL 640368, at * 2, 4 (Tenn. Ct. App. June 8, 2001) (*no perm. app. filed*). The trial courts have broad discretion in applying the factors set forth in section 36-5-101(E). *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). "Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id*.

In issuing its ruling in this case, the trial court stated its opinion that "this is a case that cries out for alimony." The record likewise supports the fact that Wife was in need of spousal support. As stated previously, she was seventy-three years old; in poor physical health; with no retirement savings besides social security benefits of $600 per month; and she had monthly expenses of approximately $3,500. Other factors supporting the award of alimony include the duration of the marriage, which lasted twenty-two years. There is also evidence in the record to support consideration of the relative fault of Husband. In light of the foregoing and in view of the fact that the record reflects that Husband is capable of paying the alimony award, we conclude that the trial court's award of alimony *in futuro* was not an abuse of discretion.

### *Conclusion*

For the foregoing reasons, we affirm the trial court in all respects. Costs of this appeal are assessed to the Appellant, Charles Fredrick Glanzman, for which execution may issue if necessary.

 

 

_____

DAVID R. FARMER, JUDGE