IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 7, 2003

## SANDRA K. LEWIS v. MICHAEL F. LEWIS

**Appeal from the Circuit Court for Rutherford County**
**No. 44812     J.S. Daniel, Judge**

---

**No. M2002-02964-COA-R3-CV - Filed February 15, 2005**

---

This appeal involves a husband's obligation to provide rehabilitative support to his former wife following the dissolution of their twenty-one year marriage. The wife filed a divorce complaint in the Circuit Court for Rutherford County. After an attempted reconciliation failed, the husband filed an answer and counterclaim for divorce. The trial court conducted a bench trial and granted the wife a divorce on the ground of adultery. The trial court also ordered the husband to pay the wife $1,000 per month in rehabilitative spousal support for seven years. The husband appealed. We agree with the trial court's decision to award the wife spousal support for seven years; however we modify the judgment to clarify the support as transitional support rather than rehabilitative.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified and Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Stephen W. Pate, Murfreesboro, Tennessee, for the appellant, Michael F. Lewis.

Daryl M. South, Murfreesboro, Tennessee, for the appellee, Sandra K. Lewis.

**OPINION**

**I.**

Michael F. Lewis and Sandra K. Lewis were married on May 30, 1981 in Rutherford County. Both had high school educations. Mr. Lewis, who was twenty-one years old at the time, worked for Smurfit Stone Container Corporation. Ms. Lewis, who was twenty-four, remained at home to raise the parties' daughter. When their daughter started school, Ms. Lewis took a series of part-time labor and production jobs. When this dispute arose, Mr. Lewis was earning approximately $48,000 per year, and Ms. Lewis was earning between $14,000 and $18,000 per year.[1]

---

[1]For two years during the marriage, Ms. Lewis earned approximately $27,000 per year.

Problems began to surface in the parties' marriage in September 1999. Mr. Lewis left home for a period of time but later returned. Thereafter, Ms. Lewis was diagnosed with cancer and underwent a hysterectomy in May 2000. The follow-up treatment left her with little energy or sexual appetite. Mr. Lewis again became frustrated with Ms. Lewis and left home for the second time. In May 2001, after Mr. Lewis returned and left several times, Ms. Lewis filed a complaint in the Circuit Court for Rutherford County seeking a divorce on the grounds of adultery, cruel and inhuman treatment, and irreconcilable differences.

The parties decided to give their marriage another chance and in July 2001, they filed an agreed order staying the divorce proceedings while they attempted a reconciliation. Mr. Lewis moved back into the house. They refinanced the property and paid off over $40,000 in marital debt. In January 2002, Mr. Lewis informed Ms. Lewis that their reconciliation had not succeeded. He moved out of the house again and declined to pay any of the household debts. Eventually, the parties entered an agreed order permitting Ms. Lewis to remain in the house pending the final hearing and requiring Mr. Lewis to pay the household expenses.

Following a hearing in October 2002, the trial court granted Ms. Lewis a divorce on the ground of adultery. In its division of the marital estate, the trial court awarded Ms. Lewis the house and all the net equity in the house because Mr. Lewis had attempted to defraud her by transferring his Harley Davidson motorcycle and a truck to his father for nominal consideration. The trial court also awarded Ms. Lewis one-half of the value of Mr. Lewis's 401k plan and one-half of his vested retirement benefit. Finally, the court directed Mr. Lewis to pay Ms. Lewis rehabilitative spousal support in the amount of $1,000 per month for seven years or until her death or remarriage. Mr. Lewis has appealed.

## II.

The only issue Mr. Lewis raises on this appeal is the award of rehabilitative spousal support. He insists that Ms. Lewis is underemployed and that he is unable to pay $1,000 per month for seven years. Ms. Lewis responds that she needs spousal support and that the trial court properly required Mr. Lewis to pay her $1,000 per month for seven years. We agree that Ms. Lewis is entitled to spousal support.

### A.

There are no hard and fast rules for spousal support decisions. *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001); *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999). Accordingly, appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Nelson v. Nelson*, 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002); *Brown v. Brown*, 913 S.W.2d 163, 169

(Tenn. Ct. App. 1994). Our role is not to fine-tune a trial court's spousal support award, *Davidson v. Davidson*, No. M2001-01830-COA-R3-CV, 2002 WL 31769205, at \*3 (Tenn. Ct. App. Dec. 11, 2002) (No Tenn. R. App. P. 11 application filed), but rather to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001).

Tennessee law recognizes several separate classes of spousal support, including long-term periodic spousal support (alimony in futuro),[2] alimony in solido,[3] rehabilitative spousal support,[4] and transitional spousal support.[5] Tenn. Code Ann. § 36-5-101(d)(1) reflects a statutory preference favoring rehabilitative spousal support and transitional spousal support over long-term periodic spousal support. *Bratton v. Bratton*, 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). However, this statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn.1991).

Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique facts of each case and require a careful balancing of all relevant factors, including those identified in Tenn. Code Ann. § 36-5-101(d)(1)(E). *Robertson v. Robertson*, 76 S.W.3d at 338; *Dube v. Dube*, 104 S.W.3d 863, 868 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). Among these factors, the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d at 342; *Bogan v. Bogan*, 60 S.W.3d at 730; *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). Of these two factors, the disadvantaged

---

[2]Long-term periodic spousal support is intended to provide long-term support to an economically disadvantaged spouse who is unable to be rehabilitated. *Burlew v. Burlew*, 40 S.W.3d at 471; *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). It is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse. *Wright v. Quillen*, 83 S.W.3d 768, 773 (Tenn. Ct. App. 2002).

[3]Alimony in solido promotes the twin goals of certainty and finality by awarding a fixed amount of support without conditions. *Bryan v. Leach*, 85 S.W.3d 136, 145 (Tenn. Ct. App. 2001). It is an award of support for a definite sum of money to be paid at once or in ascertainable installments over a definite period of time. *Burlew v. Burlew*, 40 S.W.3d at 472; *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999).

[4]Rehabilitative spousal support is currently defined as support that is intended to enable an economically disadvantaged spouse to acquire additional education and training that will enable the spouse to achieve and maintain a standard of living comparable to the standard of living that existed during the marriage or to the post-divorce standard of living expected to be available to the other spouse. Tenn. Code Ann. § 36-5-101(d)(1)(C) (Supp. 2004). Prior to the effective date of this revised definition in August 2003, the Tennessee Supreme Court had identified the marital standard of living as one of many factors to consider in making a spousal support award. *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002).

[5]Transitional spousal support is paid for a definite duration when a court finds that rehabilitation is not necessary but that the economically disadvantaged spouse needs assistance adjusting to the economic consequences of divorce. Tenn. Code Ann. § 36-5-101(d)(1)(D). Prior to August 2003, transitional spousal support was considered to be rehabilitative spousal support. *Robertson v. Robertson*, 76 S.W.3d at 340-41 (holding that rehabilitative alimony may also provide temporary income to support a disadvantaged spouse during the post-divorce economic adjustment).

spouse's need is the threshold consideration. *Aaron v. Aaron*, 909 S.W.2d at 410; *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999).

**B.**

Mr. Lewis first asserts that Ms. Lewis does not need spousal support because she is currently underemployed. While Ms. Lewis is currently earning $14,000 per year doing housekeeping work at Middle Tennessee State University, Mr. Lewis insists that she could increase her earning capacity by obtaining more training. We find little merit in this argument.

Ms. Lewis is currently forty-eight years old. She has a high school education and went to technical school for one month many years ago. Her work experience consists of various physical labor, factory production, and retail jobs. She has historically earned between $14,000 and $18,000 per year, and she has now been diagnosed with cancer and carpal tunnel syndrome. Based on our independent review of the record, Mr. Lewis has failed to convince us that Ms. Lewis is underemployed and does not need spousal support.

Finally, Mr. Lewis insists that he is unable to pay Ms. Lewis $1,000 per month in spousal support for seven years. Mr. Lewis is a supervisor at Smurfit Stone and has been employed with the company for over twenty-five years. The record contains evidence that a trucking venture of his failed several years ago and that he has accumulated debt because he has mismanaged his finances. However, he has brought these misfortunes on himself, and it is undisputed that he continues to earn $4,000 per month. He is, therefore, able to pay Ms. Lewis $1,000 per month for seven years.

**III.**

We have reviewed the record independently in light of the factors in Tenn. Code Ann. § 36-5-101(d)(1)(E) and find no basis to second guess the trial court's decision to require Mr. Lewis to pay Ms. Lewis spousal support in the amount $1,000 per month. However, in the absence of evidence of any planned rehabilitation, we have determined that Ms. Lewis's spousal support should be characterized as transitional rather than rehabilitative support. Accordingly, we affirm the judgment and remand the case to the trial court with directions to modify the judgment to require the payment of transitional support and for whatever further proceedings may be required. We tax the costs of this appeal to Michael F. Lewis and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

-4-