IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 17, 2008 Session

# LINDA KAY EDWARDS v. RONALD DELL EDWARDS

### Appeal from the Chancery Court for Cumberland County
### No. 9520-9-06     Ronald Thurman, Chancellor

---

### No. E2007-1680-COA-R3-CV - FILED AUGUST 8, 2008

---

After sixteen years of marriage, Linda Kay Edwards ("Wife") sued Ronald Dell Edwards ("Husband") for divorce. After the trial, the Trial Court entered an order, *inter alia*, granting the parties a divorce, distributing the marital property, and ordering Husband to pay Wife transitional alimony in the amount of $2,600 per month for twelve months. Wife appeals raising issues regarding the distribution of marital property and alimony. We modify the Trial Court's Final Decree to order that Husband is to pay Wife alimony in futuro in the amount of $1,000 per month after the transitional alimony ends, and we affirm as modified.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Modified, and Affirmed as Modified; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Allison Barker Watson and Vivian E. Warner, Crossville, Tennessee for the Appellant, Linda Kay Edwards.

G. Earl Patton, Crossville, Tennessee for the Appellee Ronald Dell Edwards.

**OPINION**

# Background

Wife and Husband were married in 1990 in Indiana. No children were born of the marriage. Husband retired in 2000. That same year, Wife went on disability as a result of her multiple sclerosis. In 2001, Husband and Wife moved to Tennessee and built a house. Approximately five years later, Wife sued Husband for divorce. The case was tried without a jury.

At the time of trial, Wife was 61 years old and was living in Evansville, Indiana, where she moved after the parties separated. Wife testified that she and Husband each have grown children and also grandchildren, but they had no children together. Wife was diagnosed with multiple sclerosis in 1995, during the marriage. She receives Social Security disability of $852 per month. Wife had no income other than Social Security and the temporary alimony the Trial Court ordered Husband to pay. Wife, who completed two years of college, did mainly clerical work until August of 2000, when she went on disability. Wife testified that she takes a number of medications as a result of her multiple sclerosis. Wife's affidavit of income and expenses introduced at trial shows that Wife has Social Security income of $852.00 per month and expenses of $3,026.00 per month.

When the parties married, Wife owned a small house with a mortgage on it, a car that was paid off, and a savings account containing approximately $20,000. Wife also had an IRA, but as Wife testified that she had no recollection of how much it was worth when the parties married, she stipulated at trial that this entire account would be considered marital. After the parties married, Wife sold her house and netted approximately $10,000. Wife gave her mother approximately $1,000 of that money and gave the rest to Husband. Wife testified that when the parties married, Husband had a pension through Aetna that he had accrued prior to the marriage. Wife testified that she was not claiming any portion of that pension as marital property. Wife also testified that Husband has some Vandalia stock that he inherited that is his separate property.

Wife testified that Husband had an IRA prior to the marriage, which at the time of trial had approximately $60,000 in it. Wife claimed that $37,931 of that $60,000 is marital property. When asked how she calculated the $37,931 figure, Wife explained: "With everything, we were married 10 years of the 16 years that [Husband] worked at the Keller Crescent to accrue that IRA and so I took the percentage of the 10 years, which was like 67 percent, and averaged it out and that's how I got that figure." Wife testified that Husband elected to take a survivor benefit on his Aetna pension when he retired. Because he took a survivor benefit, Husband receives less money each month so that upon his death Wife would continue to receive an income from this source. Wife stated that she would like to retain this benefit after the divorce if possible. Wife testified that she is driving a 2006 Town & Country Limited van but that she owes more on this vehicle than it is worth.

Husband was 68 years old at the time of trial and in good health. He has a college degree and worked in advertising and sales until he retired in 2000. After Husband's retirement, the parties together had an income of approximately $77,000 per year. Husband explained that when he retired in 2000: "I had a Keller Crescent pension fund that I had to take a lump sum on. I had a

profit sharing account and I had a savings account, and they all amounted to $562,000 that I put into the Merrill Lynch account." The Merrill Lynch account was a joint account. Husband testified that not all of this money was earned during the marriage, but he did not know how much of it was separate property. Husband testified that in 1995, he inherited $131,000 in cash and five shares of stock in an Illinois bank and that he put the money into the parties' joint account. Husband stated that he contributed "[a]t least 90 percent or more" of the money in the marriage. Husband has a monthly income of $862.50 from an IRA, $1,485 from a pension, and $1,422 from Social Security. Husband's affidavit of expenses introduced at trial shows that Husband has expenses of $3,610 per month. Husband testified that assuming he did not remarry, he would have no objection to Wife receiving the survivor benefits on his Aetna pension if this were possible. Husband drives a Chrysler Crossfire with no debt owed on it.

When asked, Husband testified that Wife could probably get a job "[i]f she was doing the type of work she did before. It's not manual labor. If she would have stayed in her marriage, she wouldn't have had to gone (sic) back to work in the first place." Husband testified: "she does her own housework. I've offered many times to get cleaning help for her, but she's always said no. She exercises regularly. She takes two and a half mile power walks." Husband stated that he thinks Wife is entitled to 35 percent of the house, not 50 percent.

The Trial Court entered a Final Decree on June 29, 2007, *inter alia*, granting the parties a divorce, distributing the marital property, and ordering Husband to pay Wife transitional alimony of $2,600 per month for twelve months. In its Final Decree, the Trial Court specifically found and held, *inter alia*:

The Court finds that all of the property these parties own is marital property, with the exception of a portion of the Husband's Individual Retirement Account Merrill Lynch Account…which was stipulated as the [Husband's] separate property due to [the] fact it was accrued during [Husband's] work prior to the marriage.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED:

1. That the parties are hereby declared to be divorced….

2. Each party is granted the marital personal property that is now in each party's respective possession.

3. Husband shall have and receive the 2005 Chrysler Crossfire automobile…. There is no debt owing on this vehicle.…

4. Wife shall have and receive the 2006 Chrysler Town and Country Van…and shall be solely responsible for the debt owed on said vehicle.…

5. The marital home located at 33 Madeline court, Fairfield Glade, TN 38558 is valued by the Court at Seven Hundred Eighty Thousand and 00/100 Dollars ($780,000.00). The debt owed on said home at the time of this hearing was Two

Hundred Eighty Nine Six Hundred Thirty Eight and 00/100 Dollars. ($289,638.00). The Wife's interest in the marital home is One Hundred Ninety Six Thousand One Hundred Forty Four and 80/100 ($196,144.80). Husband shall have thirty days from the date of entry of this Final Decree to purchase from Wife her interest in the marital home. This time may be extended only upon the written agreement of both parties. If the Husband fails to purchase Wife's interest within the time set forth above, the home shall be sold by public sale by the Clerk & Master and the proceeds divided Sixty per cent (60%) to the Husband, Forty (40%) to the Wife.

6. Regarding Husband's Individual Retirement Account,…Twenty Two Thousand Two Hundred Seventy Seven and 00/100 Dollars in that account is Husband's separate property and he shall have and receive the same. The remaining balance is marital property and shall be divided Sixty (60%) percent to Husband and Forty (40%) percent to Wife.

7. The Wife shall receive the sum of $55,439.60 from the parties['] joint Merrill Lynch CMA account…valued at $138,599.00 (value at date of divorce). This amount is a division based upon the Husband receiving Sixty percent (60%) and Forty percent (40%) to Wife.

8. The remaining Merrill Lynch accounts, including Wife's Individual Retirement account are to be divided, Sixty percent (60%) to Husband and Forty percent (40%) to Wife.

9. The Wife is entitled to and Husband is Ordered to pay transitional alimony in the amount of Two Thousand Six Hundred and 00/100 Dollars ($2,600.00) per month beginning June 1, 2007 and continuing for a total of twelve months.…

In its memorandum opinion dictated from the bench, the Trial Court stated that Wife should be able to generate sufficient income from the property awarded to her to take care of her needs.

Post-trial, Husband filed a motion for contempt. After a hearing, the Trial Court entered a Final Order on November 5, 2007, *inter alia*, refusing to find Wife in contempt and amending the Final Decree to include assets inadvertently omitted. The Trial Court held that these assets "were to be divided in accordance with the Court's prior order with Sixty (60%) percent to [Husband] and Forty (40%) to [Wife]."

Wife appeals to this Court.

### Discussion

Although not stated exactly as such, Wife raises two issues on appeal: 1) whether the marital property was distributed in an equitable manner; and 2) whether the Trial Court erred in not awarding Wife alimony in futuro.

Husband filed a motion asking this Court to consider certain post judgment facts. Specifically, Husband requested this Court to consider that Husband chose to take the option given by the Trial Court to purchase Wife's interest in the marital home, that Husband incurred closing costs in connection with this purchase, and that Husband's mortgage payment has increased as a result of this purchase. Husband requests that "[i]n the event the Court of Appeals reconsiders and/or reassesses the parties' incomes and needs to determine whether or not the Trial Court's Order of alimony was appropriate under the circumstances, it would be appropriate to take these facts into consideration."

The Trial Court's order gave Husband the option of purchasing Wife's interest in the marital home. If Husband chose not to purchase Wife's interest, the home would be sold and the proceeds divided 60% to Husband and 40% to Wife. Husband chose to purchase Wife's interest. Therefore, Husband voluntarily assumed the obligation of a higher mortgage payment. In addition, under either option, Wife would have been paid for her interest in the home as awarded under the Trial Court's order and so has received nothing more than what the Trial Court ordered.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We now address whether the marital property was distributed in an equitable manner. Courts must look to Tenn. Code Ann. § 36-4-121 when determining how to distribute property in a divorce. In pertinent part, Tenn. Code Ann. § 36-4-121 provides:

(b) For purposes of this chapter:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing . . .

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, . . .

* * *

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

\* \* \*

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

\* \* \*

(c)  In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties. . . .

Tenn. Code Ann. § 36-4-121 (2005).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 Tenn. App. LEXIS 100, at *11-12 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed)*.

After a careful and thorough review of the record in light of the statutory factors, we are unable to conclude that the Trial Court abused its discretion when distributing the marital property. The division cannot be considered "inequitable simply because it is not mathematically equal…." *Id*. at 219. The Trial Court found that Husband "came into the marriage with quite a bit of money" and that he contributed this significant amount to the marital estate. The Trial Court found that both parties had contributed to the acquisition of the property contained in the marital estate. However, the Trial Court also found after considering all the evidence, including Husband's having brought considerably more property into the marriage than Wife did, that Husband's contribution to the acquisition of the marital estate was greater than Wife's, and this was the basis for the Trial Court's 60% - 40% allocation. As the evidence does not preponderate against the Trial Court's findings relative to this issue, and as we find no abuse of discretion, we affirm the Trial Court's distribution of the marital property.

We next consider whether the Trial Court erred in not awarding Wife alimony in futuro. As pertinent to this issue, Tenn. Code Ann. § 36-5-121 provides:

> (d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).
> (2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by

the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(3) Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (i), the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient, except as otherwise provided in subdivision (f)(2)(B).

(4) An award of alimony in futuro may be made, either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

\* \* \*

(f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

\* \* \*

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

-8-

(3)  The duration of the marriage;

(4)  The age and mental condition of each party;

(5)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)  The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)  The separate assets of each party, both real and personal, tangible and intangible;

(8)  The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)  The standard of living of the parties established during the marriage;

(10)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)  The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.…

Tenn. Code Ann. §36-5-121 (2005).  As this Court discussed in *Dube v. Dube*:

> While all relevant factors must be considered when setting the amount of an alimony award, need and the ability to pay are the critical factors. *Robertson*, 76 S.W.3d at 342.  Discussing the intent behind alimony, our Supreme Court has held: "the purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce." *Burlew v. Burlew*, 40 S.W.3d 465, 470-71 (Tenn. 2001) (quoting *Anderton*, 988 S.W.2d at 682).
>
> Although "the legislature has demonstrated a preference for an award of rehabilitative alimony[,]" *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000), the relevant alimony statute, Tenn. Code Ann. § 36-5-101(d)(1), does contemplate, under the appropriate circumstances, a long-term award of alimony, or alimony *in futuro*, providing: "[w]here there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, . . . then the court may grant an order for payment of support and maintenance on a long-term basis . . . ." Tenn. Code Ann. § 36-5-101(d)(1).  "[T]he purpose of [alimony *in futuro*] is to provide financial support to a spouse who cannot be rehabilitated." *Burlew*, 40 S.W.3d at 471.

*Dube v. Dube*, 104 S.W.3d 863, 869 (Tenn. Ct. App. 2002).  As our Supreme Court stated in *Bratton v. Bratton*, "trial courts should not refrain from awarding long-term support when appropriate under the enumerated statutory factors.  'The statutory preference for rehabilitative support does not

entirely displace other forms of spousal support when the facts warrant long term or more open-ended support.'" *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004) (quoting *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998)) (other citations omitted).

The Trial Court stated that Wife should be able to generate sufficient income from her share of the property division to provide for her needs. The evidence preponderates against this finding. The evidence in the record on appeal shows that Wife has multiple sclerosis, that she went on disability in 2000, and that she is unable to go back to work. Wife has shown an income of $852.00 per month and expenses of $3,026.00 per month. Wife was awarded approximately $498,000 in assets from the divorce. Although Wife will be able to generate income from these assets, there was no proof that she will be able to generate enough to meet her needs. We also note that Husband was awarded an even greater share of the marital estate as his share of the marital estate totaled approximately $774,000. Husband's share includes over $457,000 in cash. Just as Wife undoubtedly will be able generate some income from her assets received in the divorce, Husband just as undoubtedly will be able generate income from assets he received.

Wife has shown an economic disadvantage relative to Husband and has shown that rehabilitation is not feasible. The evidence shows that Wife has a need for alimony in futuro and Husband has the ability to pay. However, the evidence shows that Husband cannot continue to pay $2,600 per month. After carefully considering all relevant factors, we modify the Trial Court's Final Decree to order Husband to pay to Wife alimony in futuro of $1,000 per month beginning on the first day of the month immediately after the conclusion of the transitional alimony ordered by the Trial Court, and we affirm as so modified.

## Conclusion

The judgment of the Trial Court is modified to order Husband to pay to Wife alimony in futuro of $1,000 per month beginning the first month after the conclusion of the transitional alimony, and the judgment is affirmed as so modified. This cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellee, Ronald Dell Edwards.

_____
D. MICHAEL SWINEY, JUDGE