# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 21, 2006

## VICKI LYNN FOX v. TERRY WAYNE FOX

**Appeal from the Chancery Court for Putnam County**
**No. 02-268     Vernon Neal, Chancellor**

---

**No. M2004-02616-COA-R3-CV - Filed on September 1, 2006**

---

This appeal involves the financial aspects of the dissolution of a marriage that lasted approximately ten years. Both parties sought a divorce in the Chancery Court for Putnam County. Following a bench trial, the trial court granted the wife a divorce and approved a permanent parenting plan designating her as primary residential parent for the parties' two children. In addition, the trial court classified the parties' assets, divided the marital estate, reduced the husband's alimony arrearage to a judgment for alimony in solido, and ordered the husband to pay the wife $350 per month in long-term alimony. The husband takes issue on this appeal with the manner in which the trial court classified the parties' assets and divided the marital estate and with the trial court's decision to require him to pay long-term alimony. We have determined that the trial court erred in its classification of the parties' property. However, we find that the evidence fully supports the manner in which the trial court divided the parties' marital estate, as well as the trial court's decision to award the wife long-term alimony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified and Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. PATRICIA J. COTTRELL, J., filed a separate concurring opinion.

Craig P. Fickling, Cookeville, Tennessee, for the appellant, Terry Wayne Fox.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Vicki Lynn Fox.

**OPINION**

**I.**

Terry Fox and Vicki Lynn Hensley were married in August 1993 in Putnam County. Mr. Fox was thirty-one years old at the time and was eight years older than Ms. Fox.[1] Ms. Fox had been widowed when her first husband was killed in an automobile accident while serving in the military

---

[1]Ms. Hensley changed her surname to "Fox" following the marriage in 1993.

in Japan. She entered the marriage with $544,000 in assets that she had received as a result of her first husband's death. Mr. Fox brought minimal assets into the marriage.

Mr. Fox worked mostly as a truck driver earning slightly more than $20,000 per year. Ms. Fox worked for a healthcare company until she was diagnosed with multiple sclerosis and fibromyalgia. After she was forced to stop working, Ms. Fox received disability payments from a private policy but was ineligible to draw Social Security disability benefits because of her short work history. In 2001, the Foxes traveled to Russia to adopt a set of infant twins – a boy and a girl. Ms. Fox assumed the primary responsibility of caring for the children.

The Foxes owned two marital residences during their marriage. The first was located on Carol Lane in Cookeville (Carol Lane property). Ms. Fox used her separate assets to purchase the property outright, and the title was in her name alone. Approximately two years later, the Foxes converted the Carol Lane property to rental property after the completion of the construction of their residence on Buffalo Valley Road in Baxter (Buffalo Valley Road property). This residence was constructed on real property that Ms. Fox had acquired prior to the marriage, and Ms. Fox used her separate funds to pay for the construction of the house. The title to the property remained in Ms. Fox's name alone. After the parties fired their general contractor, Mr. Fox coordinated the construction activities until the house was completed.

During their marriage the Foxes acquired three other houses and one duplex in Cookeville which they rented out. Ms. Fox's separate funds were used to purchase two of these properties and to make the down payment on another. However, the title to these properties was in both parties' names, and several of the properties were or had been encumbered by liens stemming from loans obtained jointly by the parties.

Mr. Fox abused Ms. Fox both physically and verbally throughout the marriage. He also used marijuana on a regular basis. In August 2002, Ms. Fox filed a divorce complaint in the Chancery Court for Putnam County. The children remained in her custody, and the trial court ordered Mr. Fox to pay $800 per month in child support, and to make the payments on the Buffalo Valley Road property as temporary alimony.

The trial court heard the case without a jury in June 2004. At the conclusion of the proof, the court granted Ms. Fox a divorce on the stipulated ground of inappropriate marital conduct and approved the parties' permanent parenting plan that designated Ms. Fox as the primary residential parent and required Mr. Fox to pay $882 per month in child support. The trial court reserved deciding the remaining issues because it desired to review the evidence.

One month later, in July 2004, the trial court held a hearing to announce its decision regarding the remaining issues in the case. The trial court determined that Mr. Fox had failed to pay Ms. Fox the temporary alimony as ordered, and awarded Ms. Fox $10,994.12 as alimony in solido to liquidate this arrearage.[2] The court classified all but 25% of the Carol Lane property and the Buffalo Valley Road property as Ms. Fox's separate property. Thereafter, the trial court divided the

---

[2]The trial court placed a lien on one of the rental properties awarded to Mr. Fox.

parties' marital estate valued at approximately $400,000 by awarding Mr. Fox assets, including three rental properties, valued at $188,767 and by awarding Ms. Fox assets valued at $210,941. The trial court also ordered Mr. Fox to pay long-term alimony. It directed Mr. Fox to pay the premiums for Ms. Fox's medical insurance for thirty months and then to pay Ms. Fox $350 per month.

Mr. Fox has appealed. He asserts that the trial court did not properly classify the parties' two residences and that the manner in which the trial court divided the parties' marital estate was not equitable. He also argues that the trial court erred by requiring him to pay Ms. Fox long term spousal support. For her part, Ms. Fox requests this court to award her the legal expenses she has incurred on this appeal.

## II.
### THE CLASSIFICATION OF THE CAROL LANE AND BUFFALO VALLEY ROAD PROPERTIES

We turn first to the classification of the Carol Lane and Buffalo Valley Road properties. Mr. Fox insists that the trial court should have classified both of these properties as purely marital assets because he contributed to their preservation and appreciation. Ms. Fox responds that the classification of these assets was correct. We have determined that the trial court's methodology for classifying the parties' interests in these two pieces of property was flawed and that these properties should have been classified as marital property.

### A.

Dividing a marital estate necessarily begins with the systematic identification of all of the parties' property interests. 19 W. WALTON GARRETT, TENNESSEE PRACTICE: TENNESSEE DIVORCE, ALIMONY AND CHILD CUSTODY WITH FORMS § 15:2, at 321 (rev. ed. 2004) (TENNESSEE DIVORCE). The second step is to classify each of these property interests as either separate or marital property. *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003); *Conley v. Conley*, 181 S.W.3d 692, 700 (Tenn. Ct. App. 2005); *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998). Tennessee is a "dual property" state. *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct. App. 2002). Accordingly, property cannot be included in the marital estate unless it fits within the definition of "marital property" in Tenn. Code Ann. § 36-4-121(b)(1)(A) (2005). By the same token, "separate property," as defined in Tenn. Code Ann. § 36-4-121(b)(2), should not be included in the marital estate.

The dividing line between marital and separate property frequently becomes blurred. Marital property can become separate property when one spouse gives it to the other spouse. *Kinard v. Kinard*, 986 S.W.2d 220, 232 (Tenn. Ct. App. 1998); *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989). On the other hand, separate property can become marital property either

through commingling[3] or transmutation.[4]  Even if an asset is clearly separate property, the increase in the asset's value during the marriage and the income from the asset may be considered marital property if the nonowner spouse contributed substantially to the asset's preservation and appreciation.  Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d 823, 832-33 (Tenn. 1996); *Harrison v. Harrison*, 912 S.W.2d 124, 127 (Tenn. 1995).  Contributions to the preservation or appreciation of a separate asset will be considered "substantial" if they are real and significant. *Mitts v. Mitts*, 39 S.W.3d 142, 145 (Tenn. Ct. App. 2000); *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994).

All questions relating to the classification of an asset as either marital or separate property, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual. *Current v. Current*, No. M2004-02678-COA-R3-CV, 2006 WL 656791, at *1 (Tenn. Ct. App. Mar. 15, 2006) (No Tenn. R. App. P. 11 application filed); *Bilyeu v. Bilyeu*, No. M2003-00294-COA-R3-CV, 2005 WL 3190338, at *3 (Tenn. Ct. App. Nov. 28, 2005), *perm. app. denied* (Tenn. June 12, 2006); TENNESSEE DIVORCE § 15:3, at 324.[5]  Accordingly, the appellate courts review a trial court's decisions classifying the parties' assets using the familiar standard of review in Tenn. R. App. P. 13(d).

**B.**

The manner in which the trial court classified the parties' property interests in the Carol Lane and Buffalo Valley Road properties was erroneous.  The court classified each piece of property as partially marital property and partially separate property.  Such a mixed classification is inconsistent with the fact that Tennessee is a dual property state in which each property interest owned by the parties at the time of divorce must be classified as either marital property or separate property.  Thus, the court erred by classifying the Carol Lane and Buffalo Valley Road properties as partially marital property and partially separate property.[6] *Lundquist v. Lundquist*, 923 P.2d 42, 48 (Alaska 1996) (holding that the trial court erred by classifying real property as partially marital and partially separate); *Smoot v. Smoot*, 357 S.E.2d 728, 731 (Va. 1987), *superseded by statute*, VA. CODE ANN.

---

[3]Separate property becomes marital property if it is inextricably commingled with marital property or with the separate property of the other spouse. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002); *Smith v. Smith*, 93 S.W.3d at 878.

[4]Transmutation of a separate asset into a marital asset occurs when the separate asset is jointly titled or when the parties use it in support of the marriage or in some other manner that demonstrates the parties' intent to make the asset marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d at 747; *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988); 3 JOHN TINGELY & NICHOLAS B. SVALINA, MARTIAL PROPERTY LAW § 43:11, at 43-118 (rev. 2d ed. 2006) (MARITAL PROPERTY LAW).

[5]Thus, whether a spouse's contributions to the preservation and appreciation of property is a question of fact. *Mitts v. Mitts*, 39 S.W.3d at 145; *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992).

[6]We note that another section of this court has upheld a trial court's decision to award a spouse half of a residence as marital property and half as separate property. *Arp v. Arp*, No. 03A01-9808-CV-00273, 1999 WL 427610, at *2 (Tenn. Ct. App. June 18, 1999) (No Tenn. R. App. P. 11 application filed).  While we understand that this opinion is "persuasive," Tenn. S. Ct. R. 4(H)(1), we respectfully disagree that Tenn. Code Ann. § 36-4-121 permits courts to classify a single property interest as both marital property and separate property.

§ 20-107.3(A)(3), *as recognized in Heath v. Heath*, 568 S.E.2d 408, 409 n.2 (Va. Ct. App. 2002) (holding that the marital residence cannot be classified as part marital and part separate).[7]

The proper manner to classify both the Carol Lane and the Buffalo Valley Road properties would have been to recognize at the outset that the Foxes may potentially have two separately identifiable property interests in each of these assets. The first interest is the property itself.[8] The second interest is the appreciation in the value of the property during the marriage if the non-owner spouse contributed substantially to the preservation and appreciation of the property.[9] TENNESSEE DIVORCE § 15:2, at 321 (noting that some assets may contain both marital and separate property using the appreciation in value of separate property during the marriage as an example).

## C.

In cases tried without a jury, this court may properly classify the parties' property interests when the trial court has failed to do so and when the record contains sufficient evidence to enable us to do so. We undertake this task in order to achieve finality and to avoid putting the parties to the time and expense of further proceedings in the trial court. This record contains sufficient evidence to enable us to classify the parties' interests in the Carol Lane and Buffalo Valley Road properties.

Because classification questions are inherently factual, a court's ability to classify the divorcing parties' assets depends on the adequacy of the evidence submitted by the parties. On occasion, the evidence presented by the parties is either insufficient or fails to rebut the evidence presented by the adverse party. Accordingly, clarifying the burden of persuasion with regard to the classification of property in divorce cases could assist both the parties and the trial court.

The use of two rebuttable presumptions provide a helpful starting point for classification questions. The first presumption, derived from Tenn. Code Ann. § 36-4-121(b)(1)(A),[10] is that all assets acquired by either spouse during the marriage are presumed to be marital property. *Church v. Church*, No. M2004-02702-COA-R3-CV, 2006 WL 2168271, at *7 (Tenn. Ct. App. Aug. 1, 2006); *Hunter v. Hunter*, No. M2002-02560-COA-R3-CV, 2005 WL 1469465, at *4 (Tenn. Ct. App.

---

[7]In 1990, the Virginia General Assembly amended Virginia's divorce property classification statute to authorize the courts to classify a single interest in property as partially marital property and partially separate property. 1990 Va. Acts ch. 636.

[8]In circumstances like this, the house and the real property cannot be separated. The real property and the improvements on the real property must be considered together. *Clement v. Clement*, No. W2003-02388-COA-R3-CV, 2004 WL 3396472, at *8 (Tenn. Ct. App. Dec. 30, 2004), *perm. app. denied* (Tenn. June 27, 2005 & Aug. 29, 2005).

[9]Obviously, the parties' interest in the appreciation in the value of the property during the marriage would only be relevant if the court determined that the property itself was separate property. If the property is classified as marital property, then the parties' interest in the appreciation in its value during the marriage is merged into the value of the property.

[10]Tenn. Code Ann. § 36-4-121(b)(1)(A) provides that for the purpose of dividing the parties' marital estate, "marital property" includes "all real and personal property . . . acquired by either or both spouses during the course of the marriage . . . ."

June 21, 2005) (No Tenn. R. App. P. 11 application); TENNESSEE DIVORCE § 15:4, at 333. The second presumption, derived from Tenn. Code Ann. § 36-4-121(b)(2)(A),[11] is that all assets acquired by either spouse prior to the marriage are presumed to be separate property.

Thus, the classification of all assets acquired by either spouse during the marriage begins with the presumption that the asset is marital. A party desiring to rebut this presumption (to prove that the asset acquired during the marriage is separate property) has the burden of proving by a preponderance of the evidence that the asset is separate property. *Goulet v. Heede*, No. E2000-02535-COA-R3-CV, 2002 WL 126279, at *5 (Tenn. Ct. App. Jan. 31, 2002) (No Tenn. R. App. P. 11 application filed); *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). The types of evidence that will be sufficient to rebut the presumption that an asset acquired during the marriage is marital property are found in Tenn. Code Ann. § 36-4-121(b)(2)(B)-(F).[12]

Conversely, the classification of all assets acquired by either spouse before the marriage begins with the presumption that the asset is separate. A party seeking to rebut this presumption has the burden of proving by a preponderance of the evidence that the asset acquired prior to the marriage has become marital. *Hartman v. Hartman*, No. M2003-00805-COA-R3-CV, 2004 WL 3044910, at *6 (Tenn. Ct. App. Dec. 30, 2004) (No Tenn. R. App. P. 11 application filed); *Swett v. Swett*, No. M1998-00961-COA-R3-CV, 2002 WL 1389614, at * 10 (Tenn. Ct. App. June 27, 2002) (No Tenn. R. App. P. 11 application filed); MARITAL PROPERTY LAW § 43:11 at 43-123. As a general matter, parties rebut the presumption that an asset acquired prior to the marriage is separate by presenting evidence of comingling or transmutation. *Langschmidt v. Langschmidt*, 81 S.W.3d at 747.

The Foxes used both properties as their marital residence during the marriage. They lived in the Carol Lane property during the first several years of the marriage and in the Buffalo Valley Road property for the last six years. Martial residences present unique and complex challenges, both financial and emotional, when it comes time to classify and divide the parties' marital property. For many divorcing couples, their residence is their most valuable asset. At the same time, either or both of the parties may have strong emotional attachments to the property. Robert C. Winfield, *Disposition of the Marital Residence*, TENN. FAMILY L. LETTER, Oct. 1990, at 14, 14.

A residence should not be classified as marital property simply because the parties have lived in it. However, as a general matter, a marital residence acquired by the parties during the marriage and owned by the parties jointly should be classified as marital property. *See, e.g., Altman v. Altman*,

---

[11]Tenn. Code Ann. § 36-4-121(b)(2)(A) provides that for the purpose of dividing the parties' marital estate, "separate property" includes "[a]ll real and personal property owned by a spouse before marriage . . . ."

[12]Thus, for example, if one spouse acquires an asset during the marriage, the court will begin the classification analysis by presuming that the asset is marital property because it was acquired during the marriage. Tenn. Code Ann. § 36-4-121(b) (1)(A). However, the spouse acquiring the asset may rebut the presumption by presenting evidence that the asset was "acquired in exchange for property acquired before the marriage." Tenn. Code Ann. § 36-4-121(a)(2)(B). If the spouse acquiring the asset proves that it was, in fact, acquired in exchange for separate property, then the court will classify the asset as separate property even though it was acquired during the marriage.

181 S.W.3d 676, 680-81 (Tenn. Ct. App. 2005). Even a marital residence that was separate property prior to the marriage or that was purchased using separate property should generally be classified as marital property if the parties owned it jointly because joint ownership gives rise to a rebuttable presumption that the property is marital, rather than separate, property. *Eldridge v. Eldridge*, 137 S.W.3d 1, 14 (Tenn. Ct. App. 2002); *Smith v. Smith*, 93 S.W.3d at 878; *Wright-Miller v. Miller*, 984 S.W.2d 936, 941 (Tenn. Ct. App. 1998); *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995); TENNESSEE DIVORCE § 15:4, at 108 (Supp. 2006).

However, as relevant as record ownership may be to the classification of an asset, it is not always controlling. In the final analysis, whether a particular asset is marital or separate depends on the conduct of the parties, not the record title of the asset. *Cohen v. Cohen*, 937 S.W.2d at 833 n.12; *Altman v. Altman*, 181 S.W.3d 676, 680-81 (Tenn. Ct. App. 2005); *Mondelli v. Howard*, 780 S.W.2d 769, 774 (Tenn. Ct. App. 1989), *rev'd in part on other grounds*, *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). An asset separately owned by one spouse will be classified as marital property if the parties themselves treated it as marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d at 747; *Clement v. Clement*, 2004 WL 3396472, at *8 (classifying separately owned property as marital because the parties treated the property as "their" property).

Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property. MARITAL PROPERTY LAW § 43:11, at 43-119 to -122. Accordingly, our court has classified separately owned real property as marital property when the parties agreed that it should be owned jointly even though the title was never changed, *Robertson v. Robertson*, No. M1999-02103-COA-R3-CV, 2001 WL 459100, at *3 (Tenn. Ct. App. May 2, 2001) (No Tenn. R. App. P. 11 application filed), or when the spouse owning the separate property conceded that he or she intended that the separate property would be converted to marital property. *Cronin-Wright v. Wright*, 121 S.W.3d 673, 675 (Tenn. Ct. App. 2003).

**The Carol Lane Property**

Following the parties' marriage, Ms. Fox purchased the Carol Lane property in her own name using her separate funds. The parties lived in the home for approximately two years, but Ms. Fox continued to hold the property in her own name. There is no evidence of a written or oral agreement regarding the ownership of the property. Likewise, the record contains no direct evidence regarding Ms. Fox's intention to maintain the residence as her separate property. Similarly, the record contains little evidence regarding Mr. Fox's efforts to preserve or increase the value of this property. The record does show, however, that the taxes, insurance premiums, and utilities were paid from a joint account and that the Foxes used the property as security for a joint debt that was paid off using funds from a joint account.

Notwithstanding the facts that Ms. Fox purchased the Carol Lane property using her separate funds and that the title remained in Ms. Fox's name, the property is presumed to be marital property because it was purchased during the marriage and because the parties used it as their marital home.

Ms. Fox could have rebutted this presumption by presenting evidence demonstrating that she intended to keep and maintain the property separate. Ms. Fox produced no such evidence and, in fact, buttressed the property's status as marital property by conceding that joint funds were used to pay the taxes, insurance premiums, and utilities and that the parties used the property to secure a joint marital debt that was repaid using marital funds. Accordingly, the trial court erred by classifying any portion of the Carol Lane property as separate property. The Carol Lane property should be considered to be marital property.[13]

## The Buffalo Valley Road Property

Ms. Fox purchased the 29-acre tract on Buffalo Valley Road prior to the marriage using her separate funds. The title to the property remained in Ms. Fox's name throughout the marriage. However, approximately two years following their marriage, the Foxes constructed a house on the property to use as their marital residence. Most of the funds for the construction of the house came from Ms. Fox's separate property; however payments for the construction expenses were made from a joint account that also contained Mr. Fox's funds. In addition to his modest financial contributions, Mr. Fox coordinated the construction after the Foxes fired their contractor. He also did some painting and bush hogging. The Foxes later built a swimming pool using funds from a joint loan that was repaid with funds from their joint account. The insurance premiums and property taxes were likewise paid from this joint account.

While the 29-acre tract was Ms. Fox's separate property when the Foxes married, it became marital property when they decided to construct their marital home on the property and then lived in the home for approximately six years before the divorce. Ms. Fox presented no evidence regarding any oral or written understanding between her and Mr. Fox regarding the ownership of the property. Without such evidence, the use of joint assets to pay for the construction of the pool and to pay the taxes and insurance premiums on the house, as well as Mr. Fox's efforts to maintain and preserve the property, reflect the Foxes' intention to treat the property as marital property, rather than Ms. Fox's separate property. Accordingly, the trial court also erred by classifying any portion of the Buffalo Valley Road property as Ms. Fox's separate property. The Buffalo Valley Road property should be considered marital property.[14]

## III.
### THE EQUITABLE DIVISION OF THE MARITAL ESTATE

Mr. Fox also insists that the trial court's classification errors undermined the validity of the manner in which the court divided the marital estate. He insists that he is entitled to a larger monetary award and a greater portion of the marital property than he received from the trial court. We have independently analyzed the record in light of the factors in Tenn. Code Ann. § 36-4-121

---

[13] Because we have classified the Carol Lane property as marital property, we need not determine whether the increase in its value during the marriage is marital property.

[14] Because we have classified the Buffalo Valley Road property as marital property, we need not address whether the increase in its value during the marriage is marital property.

and have determined that the result achieved by the trial court was equitable, even though the methodology the trial court used was flawed.

**A.**

After the trial court has identified and classified the parties' assets, it must then divide the marital assets in an equitable manner. *Batson v. Batson*, 769 S.W.2d at 859; TENNESSEE DIVORCE § 15:2, at 321. This process requires the trial court to first place a reasonable value on each asset subject to division. *Church v. Church*, 2006 WL 2168271, at *5; *Bilyeu v. Bilyeu*, 2005 WL 3190338, at *3 n.1; *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV. 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003) (No Tenn. R. App. P. 11 application filed); MARITAL PROPERTY LAW § 44:1, at 44-2 ("The view that has garnered the support of the most jurisdictions . . . is that the trial court must determine the value of all marital property before distributing it." (footnote omitted)).

Valuing marital property is not an exact science. *Holt v. Holt*, No. 01A01-9609-CH-00423, 1997 WL 751999, at *2 (Tenn. Ct. App. Dec. 5, 1997) (No Tenn. R. App. P. 11 application filed). It is a question of fact that depends on the evidence offered by the parties. The parties themselves must come forward with competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d at 231; *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented by all the relevant valuation evidence. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996). The trial court's valuation of marital property is entitled to great weight on appeal and will not be second-guessed unless it is not supported by a preponderance of the evidence. *Smith v. Smith*, 93 S.W.3d at 875; *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995).

Once the parties' marital property has been classified and valued, the trial court's goal is to divide the marital property in an essentially equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). A division of marital property is not rendered inequitable simply because it is not precisely equal, *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002), *Cohen v. Cohen*, 937 S.W.2d at 832, or because each party did not receive a share of every piece of marital property, *Morton v. Morton*, 182 S.W.3d 821, 833-34 (Tenn. Ct. App. 2005); *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001). The fairness of the trial court's approach is inevitably reflected in its results. *Altman v. Altman*, 181 S.W.3d at 683; *Bolin v. Bolin*, 99 S.W.3d 102, 107 (Tenn. Ct. App. 2002).

Dividing marital property is not a mechanical process but rather is guided by carefully weighing the relevant factors in Tenn. Code Ann. § 36-4-121(c). *Flannary v. Flannary*, 121 S.W.3d at 650-51; *Tate v. Tate*, 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003); *Kinard v. Kinard*, 986 S.W.2d at 230. Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn. 2004); *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Batson v. Batson*, 769 S.W.2d at 859. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital

property. *Morton v. Morton*, 182 S.W.3d at 834. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable. *Jolly v. Jolly*, 130 S.W.3d at 785-86; *Gratton v. Gratton*, No. M2004-01964-COA-R3-CV, 2006 WL 794883, at *7 (Tenn. Ct. App. Mar. 28, 2006) (No Tenn. R. App. P. 11 application filed); *Kinard v. Kinard*, 986 S.W.2d at 231.[15]

**B.**

Based on the manner in which the trial court classified the Foxes' assets, the value of their net marital estate was $402,708. The court divided this estate in the following manner:

| **Wife** | | **Husband** | |
|---|---|---|---|
| Buffalo Valley Road | $103,750 | East 16th Street | $60,000 |
| Carol Lane | 10,105 | East 20th Street | 52,000 |
| North Whitley | 25,466 | South Walnut Street | 45,000 |
| Prudential Stock Acct. | 40,408 | Mr. Fox's Wachovia Ret. Acct. | 4,772 |
| Ms. Fox's 401(k) | 15,207 | Mr. Fox's Rural Elec. Pension | 5,971 |
| U.S. Bank Savings | 3,658 | Mr. Fox's Checking Acct. | 16,524 |
| U.S. Bank Checking | 5,597 | 1993 Toyota Pickup | 4,000 |
| 1997 Toyota Camry | 6,250 | 1979 Ford Pickup | 3,500 |
| Utility Trailer | 500 | Household Goods[16] | - - |
| Household Goods[16] | - - | | |
| | $210,941 | | $191,767 |
| | (52.4%) | | (47.6%) |

Accordingly, the trial court awarded Ms. Fox 52.4% of the net marital estate. Mr. Fox received the remaining 47.6%, including three rental properties.

The correction of the trial court's classification errors increases the value of Foxes' net marital estate by 85% from $402,708 to $741,273. It does not necessarily follow that Mr. Fox is

---

[15]The manner in which the trial court divides the marital property cannot be considered without also considering the manner in which the trial court allocates the marital debt. Trial courts have not completely divided a marital estate until they have allocated both the marital property and the marital debt. *Robertson v. Robertson*, 76 S.W.3d at 341; *Hopkins v. Hopkins*, No. M2002-02233-COA-R3-CV, 2003 WL 21462971, at *6 (Tenn. Ct. App. June 25, 2003), *rev'd in part on other grounds*, 152 S.W.3d 447 (Tenn. 2004); *Anderton v. Anderton*, 988 S.W.2d at 679.

[16]The approximate value of the parties' household goods is $8,000. The trial court acknowledged that it had awarded Mr. Fox a disproportionately large share of the goods, but on appeal both parties assert that the division was mutually acceptable. We have not, therefore, attempted to value the goods, and we have not included them in our calculations.

entitled to 47.2% of the value of the revised estate. Our goal is to divide the Foxes' marital estate in an essentially equitable manner in light of the factors in Tenn. Code Ann. § 36-4-121. Based on the evidence, we have determined that the most relevant factors are Tenn. Code Ann. § 36-4-121(c)(2), (4), (5), (7) and Tenn. Code Ann. § 36-4-121(d).

The Foxes' ability to acquire most of their assets can be traced back to Ms. Fox's separate assets. It was the funds that Ms. Fox received following the death of her first husband that enabled the parties to acquire their marital homes and rental property. Mr. Fox entered the marriage with few assets but with an ability to earn income. Ms. Fox entered the marriage with considerable separate property, but her ability to earn income diminished when she was diagnosed with multiple sclerosis. Mr. Fox continues to have an ability to accumulate future capital assets, but Ms. Fox no longer has an ability to do so. During the parties' marriage, Ms. Fox has contributed both her separate property and her energies as a housewife and mother to the welfare of her family. Mr. Fox's contributions to the marriage, as least as far as the evidence shows, have been much more modest, almost to the point of being indiscernible. Finally, since Ms. Fox will continue to be the primary residential parent, it is appropriate that she be permitted to retain the marital home.

Accordingly, we have determined that an equitable division of the marital property in light of the evidence would not be an equal one. Rather, we have determined that the revised net marital estate should be divided as follows:

| **Wife** | | **Husband** | |
|---|---|---|---|
| Buffalo Valley Road | $415,000 | East 16th Street | $60,000 |
| Carol Lane | 40,420 | East 20th Street | 52,000 |
| North Whitley | 25,466 | South Walnut Street | 45,000 |
| Prudential Stock Acct. | 40,408 | Mr. Fox's Wachovia Ret. Acct. | 4,772 |
| Ms. Fox's 401(k) | 15,207 | Mr. Fox's Rural Elec. Pension | 5,971 |
| U.S. Bank Savings | 3,658 | Mr. Fox's Checking Acct. | 16,524 |
| U.S. Bank Checking | 5,597 | 1993 Toyota Pickup | 4,000 |
| 1997 Toyota Camry | 6,250 | 1979 Ford Pickup | 3,500 |
| Utility Trailer | 500 | Household Goods[16] | - - |
| Household Goods[16] | - - | | |
| | $552,506 | | $191,767 |
| | (74.5%) | | (25.5%) |

Based on this division, Ms. Fox will receive approximately 75% of the marital estate, and Mr. Fox will receive the remaining 25%.

# IV.
## THE AWARD OF LONG-TERM ALIMONY

Mr. Fox also takes issue with the trial court's decision to award Ms. Fox long-term alimony. He asserts that he should be considered the economically disadvantaged spouse. Ms. Fox responds that she needs the support to help defray the expenses associated with her medical condition. While the record does not support Mr. Fox's assertion of penury, it provides a more than ample factual basis for awarding Ms. Fox long-term alimony.

## A.

There are no hard and fast rules for spousal support decisions. *Manis v. Manis*, 49 S.W.3d at 304; *Anderton v. Anderton*, 988 S.W.2d at 682; *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999). Accordingly, appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statues. *Nelson v. Nelson*, 106 S.W.3d 20, 23 (Tenn. Ct. App. 2002); *Brown v. Brown*, 913 S.W.2d at 169. Our role is not to fine-tune a trial court's spousal support award, *Davidson v. Davidson*, No. M2001-01830-COA-R3-CV, 2002 WL 31769205, at *3 (Tenn. Ct. App. Dec. 11, 2002) (No Tenn. R. App. P. 11 application filed), but rather to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Bogan v. Bogan,* 60 S.W.3d 721, 733 (Tenn. 2001).

Tennessee law recognizes several separate classes of spousal support, including long-term spousal support (alimony *in futuro*), alimony *in solido*, rehabilitiative spousal support, and transitional spousal support. Tenn. Code Ann. § 36-5-101(d)(1)(2005) reflects a statutory preference favoring rehabiltitative spousal support and transitional spousal support over long-term periodic spousal support. *Bratton v. Bratton*, 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000). However, this statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991).

Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique factors of each case and require a careful balancing of all relevant factors, including those identified in Tenn. Code Ann. § 36-5-101(d)(1)(E). *Robertson v. Robertson*, 76 S.W.3d at 338; *Dube v. Dube*, 104 S.W.3d 863, 868 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). Among these factors, the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d at 342; *Bogan v. Bogan*, 60 S.W.3d at 730; *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). Of these two factors, the disadvantaged spouse's need is the threshold consideration. *Aaron v. Aaron*, 909 S.W.2d at 410; *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999).

**B.**

It was uncontroverted at trial that Ms. Fox's medical condition prevents her from working. Mr. Fox stipulated that Ms. Fox is disabled, and the trial court found that there was no evidence to support the contention that she could be rehabilitated and put back to work. The court found further that Ms. Fox's need for alimony stems from her extraordinarily high medical expenses and the probability that she will be unable to obtain insurance once she can no longer be covered through Mr. Fox's policy.

Mr. Fox argues that when Ms. Fox's disability benefits, income from rental properties, and child support are considered, Ms. Fox's income exceeds her needs as stated during the divorce proceeding. This argument ignores the fact that Ms. Fox's monthly medical expenses of approximately $1,300 are presently covered primarily through insurance which she will, in all likelihood, be unable to obtain in the future. After paying alimony, Mr. Fox has a monthly gross income of approximately $3,450. With alimony and excluding child support, Ms. Fox can expect a monthly gross income of approximately $3,150. Ms. Fox can expect no increase in earning capacity and can depend upon a significant increase in medical expenses. Mr. Fox, on the other hand, is in good health and has seen his income increase during the past few years. He can expect full social security retirement benefits, and Ms. Fox cannot.

Mr. Fox's assertion that he is economically disadvantaged is far from compelling. He points to the fact that Ms. Fox leaves the marriage with assets now valued at approximately $550,000. However, taken in context, Ms. Fox's financial circumstances at the time of the divorce are not much different from her circumstances at the time of the marriage. Ms. Fox entered the marriage with assets valued at approximately $544,000. She leaves the marriage with assets of essentially the same value and with a medical condition that leaves her prognosis uncertain at best. In comparison, Mr. Fox entered with marriage with few assets and is leaving the marriage with almost $200,000 in assets and a productive working career ahead of him. We find no economic disadvantage here.

**V.**
**MS. FOX'S ATTORNEY'S FEES**

As a final matter, Ms. Fox requests this court to award her the legal expenses she has incurred on this appeal. She asserts that she is economically disadvantaged and that she should not be forced to use the assets intended to support her in the future to pay the legal expenses that Mr. Fox's appeal has forced her to incur. We agree.

In appropriate circumstances, appellate courts may award prevailing parties their legal expenses incurred on appeal. These awards are generally withheld when both parties have been at least partially successful. *Smith v. Smith*, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1997); *Young v. Young,* 971 S.W.2d 386, 393 (Tenn. Ct. App. 1997). Decisions regarding a request for attorneys fees on appeal in a divorce case should be made using the same factors in Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2000) used to determine whether a spouse should receive an award for legal expenses incurred in the trial court. *Kincaid v. Kincaid*, 912 S.W.2d at 144. These awards should be viewed as spousal support. *Smith v. Smith*, 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995); *Gilliam*

*v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App.1988). Thus, parties may be entitled to an additional award for their legal expenses if they demonstrate that they lack sufficient funds to pay their legal expenses or that they would be required to deplete other needed assets to do so. *Brown v. Brown*, 913 S.W.2d at 170; *Kincaid v. Kincaid*, 912 S.W.2d at 144.

Mr. Fox won the battle but lost the war in this case. The errors in the trial court's valuation methodology have not affected the ultimate division of the marital property. While Ms. Fox leaves the marriage with approximately $550,000 in assets, the bulk of these assets consist of the marital home and other non-liquid assets that Ms. Fox will eventually rely on to support herself. She is not entitled to Social Security disability benefits, and she will never draw a regular Social Security benefit or a private retirement benefit because of her work history. The property Ms. Fox has received in the division of the marital estate will take the place of these benefits. She should not be required to liquidate any of these assets to pay her lawyer on this appeal. Accordingly, on remand, the trial court is directed to enter a supplemental order requiring Mr. Fox to pay Ms. Fox for the reasonable legal expenses she incurred as a result of this appeal.

## VI.

We affirm the judgment as modified herein and remand the case to the trial court to enter a judgment for Ms. Fox's attorney's fees on appeal and for whatever further proceedings may be required. We tax the costs of this appeal in equal proportions to Terry Wayne Fox and his surety and to Vicki Lynn Fox for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.