IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 19, 2008 Session

## STACY CAGLE DAVIS v. ROBERT F. DAVIS

### Appeal from the General Sessions Court for Loudon County
No. 9670/121     William H. Russell, Judge

### No. E2007-01251-COA-R3-CV  - FILED MAY 29, 2008

After more than eighteen years of marriage, Stacy Cagle Davis ("Wife") sued Robert F. Davis ("Husband") for divorce.  The case was tried and the Trial Court entered a Final Decree declaring the parties divorced, approving the parenting plan submitted with regard to the parties' minor child, ordering Husband to pay child support, dividing the marital property and marital debts, and denying Husband's request for alimony.  Husband appeals the denial of his request for alimony to this Court. We reverse the denial of alimony to Husband, award Husband rehabilitative alimony of $800 per month for 36 months, award Husband attorneys' fees at trial and on appeal, and remand to the Trial Court for a determination of the proper amount of attorneys' fees.  The remainder of the Trial Court's Final Decree is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Reversed, in part; Affirmed, in part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Kimberlee A. Waterhouse, Lenoir City, Tennessee for the Appellant, Robert F. Davis.

Robert H. Green and Catherine E. Shuck, Knoxville, Tennessee for the Appellee, Stacy Cagle Davis.

### OPINION

## Background

Husband and Wife were married in March of 1987. In October of 2005, Wife sued Husband for divorce. At the time of trial Wife was 42 years old, Husband was 45 years old, and both parties were in good health. Wife has a Bachelor's degree from the University of Tennessee and works at Oak Ridge National Laboratory. Wife testified that in 2006, her salary was approximately $72,000.

Husband works as a lab technician for an optometrist. For the five years before trial, Husband earned around $20,000 a year. Prior to that, Husband worked for A.E. Staley in Loudon, Tennessee. Husband made approximately $48,000 the last full year he worked at A.E. Staley. Husband testified that he has skills in distillation and industrial waste management.

Husband was fired from A.E. Staley. He testified that "the stress had gotten to me. The swing shift had gotten to me. My personal life was in shambles and just started making a lot of mistakes and they let me go." Wife testified that Husband "had a DUI in the company rented car," which contributed to losing his job with A.E. Staley. Husband testified that he had problems with depression "[t]owards the end of my working career at Staley…." He also testified that he was on medication for a while, but that he stopped taking the medication in March of 2005 because he is no longer dealing with depression. Husband testified that he believes that if he goes back to swing shift work like he did at A.E. Staley, his problems with depression will come back.

Husband testified that he needs a college degree to earn an income similar to what he earned at A.E. Staley. He testified that he wants to get a degree in industrial engineering, which would enable him to obtain a better paying job. Husband anticipates it would take less than three years to obtain this degree. He testified that he would like to "[s]tart out at Roane State and take as many classes there as I can before actually transferring to say the University of Tennessee to finish the higher level classes." Husband testified that if he obtained a degree, he could earn "[b]etween fifty and seventy-five thousand a year starting out." Husband admitted that he has attended college in the past and that he "hated it" and that he did not do well, obtaining C's and D's in some classes and failing or withdrawing from others.

Both parties submitted affidavits of their income and expenses at trial. Wife's affidavit shows that after payment of regular expenses, Wife has a monthly surplus of approximately $1,400. Husband's affidavit shows a monthly deficit after payment of regular expenses of approximately $1,800.

At the conclusion of the trial, the Trial Court entered a Final Decree incorporating the Trial Court's memorandum opinion and, *inter alia,* declaring the parties divorced, approving the parenting plan submitted by the parties, ordering Husband to pay child support, dividing the marital property and marital debts, and denying Husband's request for alimony. In its memorandum opinion, the Trial Court stated:

Now, [Husband] has implied through his lawyer and through his testimony for me to consider requiring his soon to be ex-wife to pay him alimony. In order for me to do that on the basis that he has asked for it, I would need to be convinced of several things. In considering whether or not to do that, I'll share with you what I have considered. He says that he needs to go back to school; however, today, as of this date, he submits no plan of going to school. It's some vague thing about engineering, industrial engineering. There is no evidence that he has made application to see if he can even get in to school. There is no evidence presented that the Court could make any intelligent reasonable plan based on the cost of school because he didn't present any.

He has testified that he lost his job at Staley, which was apparently a fairly good job, some five years ago and has been working in a couple of different places since that time, and during that time period has made no effort to obtain any additional education. He has not applied to go to school, he's taken no part-time courses, and has made no effort that was presented into evidence that he was serious about doing anything on his own to overcome what he calls this educational difference and deficit. I think it would be grossly unfair to ask the other party to this to support his request that he be given money to obtain an education and I don't have any idea that he has any definite plan of how to accomplish that or how to do it. I've been presented no plan. So, therefore, the Court is going to deny the request for alimony.

Another reason, therefore, is that the parties have on deposit with a local bank some hundred and thirty-nine thousand dollars of which each party shall receive one/half. From those amounts, if [Husband] is interested, he can start obtaining his education and change his status in life.

Husband appeals the denial of his request for alimony to this Court.

**Discussion**

Although not stated exactly as such, Husband raises two issues on appeal: 1) whether the Trial Court erred in failing to award rehabilitative alimony to Husband, and, 2) whether the Trial Court erred in failing to award attorneys' fees to Husband. Husband also requests an award of attorneys' fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in failing to award rehabilitative alimony to Husband. Husband requests an award of $1,500 per month of rehabilitative alimony. Because the amount of alimony to be awarded, if any, is within the sound discretion of the trial court in light of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997). As pertinent to this issue, Tenn. Code Ann. § 36-5-121 provides:

> **36-5-121. Decree for support of spouse.** – (a) In any action for divorce, legal separation or separate maintenance, the court may award alimony to be paid by one spouse to or for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties. The court may fix some definite amount or amounts to be paid in monthly, semimonthly or weekly installments, or otherwise, as the circumstances may warrant….
>
> * * *
>
> (d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).
>
> (2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.
>
> * * *
>
> (e)(1) Rehabilitative alimony is a separate class of spousal support, as distinguished from alimony in solido, alimony in futuro, and transitional alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.
>
> (2) An award of rehabilitative alimony shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of a substantial and material change in circumstances. For rehabilitative alimony to be extended beyond the term initially established by the court, or to be increased in amount, or both, the recipient of the

rehabilitative alimony shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

(3) Rehabilitative alimony shall terminate upon the death of the recipient. Rehabilitative alimony shall also terminate upon the death of the payor, unless otherwise specifically stated.

\* \* \*

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn Code Ann. § 36-5-121 (2005).

As this Court discussed in *Dube v. Dube*:

While all relevant factors must be considered when setting the amount of an alimony award, need and the ability to pay are the critical factors. *Robertson*, 76 S.W.3d at 342. Discussing the intent behind alimony, our Supreme Court has held: "the purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce." *Burlew v. Burlew*, 40 S.W.3d 465, 470-71 (Tenn. 2001) (quoting *Anderton*, 988 S.W.2d at 682).

*Dube v. Dube*, 104 S.W.3d 863, 869 (Tenn. Ct. App. 2002).

Wife argues on appeal that "where Husband's financial situation was created by his own decisions and where Husband has no clear plan for rehabilitation, Wife should not be required to provide support." Husband testified to his plan to obtain a degree in industrial engineering within approximately three years by "[s]tart[ing] out at Roane State and tak[ing] as many classes there as I can before actually transferring to say the University of Tennessee to finish the higher level classes." Husband further testified that obtaining such a degree would enable him to earn significantly more money than he currently is able to earn. This would allow Husband to achieve, with reasonable effort, an earning capacity that would permit his standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to Wife, which is the purpose of rehabilitative alimony.

Wife also argues that Husband "never, in five years, made any attempt to further his education and had taken no concrete steps in that direction as of the time of trial" and further that "Husband's testimony showed that he has little aptitude for or patience with the upper-level math and science courses that would be required for him to obtain an engineering degree." The purpose of rehabilitative alimony, however, is not to guarantee that the recipient will be rehabilitated as no court has the power to make such a guarantee, but rather is to allow the recipient the reasonable opportunity to rehabilitate himself or herself.

A careful and thorough review of the record on appeal reveals that Husband has shown a financial need and Wife has the ability to pay alimony. Our gender neutral review of the record in light of the statutory factors shows that Husband is entitled to an award of rehabilitative alimony. We reverse the denial of alimony to Husband and award Husband rehabilitative alimony in the amount of $800 per month for 36 months.

We note that given the facts of this case, if rehabilitative alimony had not been appropriate, then transitional alimony in the same amount for the same duration would have been appropriate. The evidence in the record is clear that Husband is the economically disadvantaged spouse who, if he did not receive rehabilitative alimony, would need assistance to adjust to the economic consequences of the divorce and that Wife has the ability to pay this alimony. Therefore, if Husband were not to receive rehabilitative alimony, transitional alimony would be appropriate.

We turn next to the issue of whether the Trial Court erred in failing to award attorneys' fees to Husband. An award of attorney fees in a divorce case constitutes alimony in solido. *See Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). As pertinent to this issue, Tenn. Code Ann. § 36-5-121 provides: "Alimony in solido may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5) (2005). In determining whether to award attorney fees, a trial court should consider the relevant factors set forth in Tenn. Code Ann. § 36-5-121(i). Awards of attorney fees are within the sound discretion of the trial court, and will not be disturbed on appeal unless the evidence preponderates against the award. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As this Court explained in *Koja v. Koja*:

> "[Awards of attorneys' fees as alimony in solido] are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses," Brown v. Brown, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994) (citing *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), and *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986)), or would be required to "deplete his or her resources in order to pay these expenses." Id. (citing *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App, 1980)). Where one party has been awarded additional funds for maintenance and support and such funds are intended to provide the party with a source of future income, the party need not be required to pay legal expenses by using assets that will provide for future income. *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988).

*Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000).

The record reveals that Husband has the financial need and Wife has the ability to pay. In addition, the record reveals that Husband had been using a joint credit card to pay for necessities and also charged his attorney's retainer fee to that card. Wife testified that she paid those charges with the exception of the legal fees up until the time the parties' marital home was sold. She stated: "Up until that time our mortgage was not allowing him to pay that credit card.…The mortgage was just under a thousand dollars." Husband purchased a house approximately one month after the marital home was sold so he would have a place to live, and his affidavit of income and expenses shows that his current mortgage payment is $960 per month. Husband testified that he had to finance 100% of the purchase price of his new home. Husband does not have sufficient funds to pay his legal expenses without depleting his limited resources. After considering all of the relevant factors, including Husband's financial need and Wife's ability to pay, we conclude that Husband is entitled to an award of attorneys' fees as alimony in solido. We further hold that Husband is entitled to an award of attorneys' fees on appeal. We remand this case to the Trial Court to determine the proper amount of attorneys' fees both at trial and on appeal.

## Conclusion

The judgment of the Trial Court is reversed to award rehabilitative alimony to Husband in the amount of $800 per month for 36 months, to award attorneys' fees at trial as alimony

in solido to Husband, and to award attorneys' fees to Husband on appeal. The judgment of the Trial Court is affirmed in all other respects. This case is remanded to the Trial Court for a determination of the proper amount of attorneys' fees both at trial and on appeal and for collection of the costs below. The costs on appeal are assessed against the Appellee, Stacy Cagle Davis.

_____

D. MICHAEL SWINEY, JUDGE